## HUBER v. CULP.

No. 4371.  Opinion Filed May 25, 1915.

(149 Pac. 216.)

1   CONTRACTS—Public Policy—Question for Court. It is a question for the court to determine, as a matter of law, whether a contract is or is not against public policy.

2.   CONTRACTS—Public Policy—Validity. Evidence examined, and held insufficient to show that the agreement in question has a tendency to relieve the husband from the financial responsibilities imposed upon him by his marital duties and obligations.

3.   CONTRACTS—Public Policy—Validity. A clause in a contract

between husband and wife, which provides that should either party desire to obtain a divorce, the other party would not appear therein for the purpose of making a defense to such action, is against public policy and void.

(a) Such clause, however, is severable from the terms of separation and property, settlement which were valid and enforceable, and therefore does not render the entire agreement void.

(b) Where there is an absence of evidence tending to connect Culp with a participation in the agreement pertaining to the separation or promise that neither should appear and contest the action for divorce, held, that the contract between Mrs. Huber and Culp could not be affected by such void clause.

4. CONTRACTS—Public Policy—Validity. There was nothing in the contract between Mrs. Huber and Culp tending to prevent opposition to a contemplated divorce, but the agreement which did tend to prevent such opposition was one entered into between the Hubers.

5. CONTRACTS—Validity—Public Policy. In order to declare a contract against public policy and void, it must conflict with the morals of the times or contravene established interests of society, as deduced from the Constitution, laws, and judicial decisions.

6. CONTRACTS—Validity—Public Policy. Power of the court to declare a contract void as being in contravention of public policy is a very delicate and undefined power ,and should be exercised only in cases free from doubt.

7. CONTRACTS—Public Policy—Evidence. Evidence examined, and held sufficiently definite and certain to have warranted the court in submitting the same to the jury.

(Syllabus by Rittenhouse, C.)

*Error from Superior Court, Muskogee County;*

*Farrar L. McCain, Judge.*

Action by Ella M. Huber against Archie W. Culp. Judgment for plaintiff and defendant brings error. Reversed and remanded for new trial.

*Beall & Neff,* and *Bailey, Wyand & Moon,* for plaintiff in error.

*Blakeney & Maxey,* for defendant in error.

RITTENHOUSE, C.    Ella M. Huber and John G. Huber were married in 1894, and accumulated property during their married life to the value of approximately $132,580.    In the year 1909 they separated, and the husband instituted an action against Archie W. Culp for $60,000 damages for the alienation of his wife's affection.    Subsequently, Mrs. Huber went to Kansas City, Mo., and while there received a phone message from Culp, requesting an opportunity to have a talk with her relative to the status of the alienation suit.    They afterwards met in the parlor of the Savoy Hotel, and at the solicitation of Culp Mrs. Huber left for Muskogee to endeavor to procure from her husband a settlement.    When she arrived at Muskogee, she went to the Missouri Hotel, which was conducted by her husband, and endeavored to persuade him to settle their differences, but failed.    In November she left for Kansas City again, and after being there about three days received a phone message from Culp, through his lawyer, to come to Muskogee at once, as they thought that a settlement could be made.    When she arrived in Muskogee, she went to the office of the attorney for Culp, and talked over the matter of the settlement.    Mrs. Huber testified that she informed Culp at that time that her husband had offered her a one-seventh interest in their joint property, but that she would not accept this amount.    Culp thereupon told her that if she would get the alienation suit settled, he would make good to her any loss she might sustain in settling the case.    In other parts of the record, she testified that she informed Culp of her contention for a one-third interest in the property, and that Culp had told her that if she would accept the one-seventh interest and get the alienation suit dismissed, he would pay her the difference between the one-seventh and the one-third which she was contend-

ing for, and upon this representation she entered into a contract with her husband, John G. Huber, on December 5, 1910, whereby she accepted a one-seventh interest in the property, amounting to $15,386.95; and agreed in said contract for the custody of the children; that the suit pending in the superior court of Muskogee county, Okla., entitled John G. Huber, Plaintiff, v. A. W. Culp, Defendant, the same being No. 832, should be dismissed; and further agreeing that if either party to the agreement should thereafter desire to obtain a divorce, all the financial differences should, by the contract, be deemed to have been settled, and that neither party should appear in such divorce suit for the purpose of claiming any financial benefit or making any defense to such action for divorce. After this settlement was made, Mrs. Huber demanded of Culp that he pay her the difference between the one-seventh which she accepted in order to get the alienation suit dismissed and the one-third interest which she was claiming. Culp refused to comply with this part of the agreement, and this suit was instituted to enforce collection. Upon the trial, objection was made to the introduction of any evidence on the ground that the petition declared on a contract which was illegal, unlawful, immoral, and that no remedy for recovery could be allowed under the allegations thereof. This objection was overruled. At the close of the testimony, a demurrer was filed on the ground that the pretended cause of action was based upon a contract which was contrary to every principle of decency, and therefore against public policy. This demurrer was by the court sustained on the grounds that the contract was against public policy.

It is a question for the court to determine, as a matter of law, whether the contract is or is not against public policy. *Smith v. Du Bose,* 78 Ga. 413, 3 S. E. 309, 6 Am. St. Rep. 260; *Weber v. Shay,* 56 Ohio St. 116, 46 N. E. 377, 37 L. R. A. 230, 60 Am. St. Rep. 743; 9 Cyc. 483; Greenhood on Public Policy, 123.

It is contended by defendant in error that the court below rightfully sustained the demurrer to the evidence for the following reasons: (1) The agreement tends to relieve the husband, Mr. Huber, of his marital duties and obligations to his wife, the plaintiff, and is contrary to public policy and void; (2) that the contract induced by the defendant to have been executed tends to prevent opposition to the contemplated divorce action, and is therefore aginst public policy and void; (3) the evidence conclusively disclosed that the agreement of Mr. Culp to pay Mrs. Huber the difference between the alimony she claimed and what she received in the settlement is so indefinite and uncertain as to the amount of the liability that no recovery could be had.

The first reason assigned is not supported by the evidence. By the terms of the agreemnt, Culp did not relieve the husband of his martial duties and obligations. The wife claimed a one-third interest in the property. Nothing in the agreement nor the evidence shows that this property was given to her as alimony, but everything indicates that it was a division of the property earned by them jointly during their married life, and for Culp to promise that he would reimburse Mrs. Huber for any sacrifice she might make of her property in order to get the suit for alienation dismissed could not, under any view of the case, be deemed to have been an agreement to pay alimony for the support of Mrs. Huber. She was giving to her husband a portion of her individual property under an agreement with Culp that if she would take a one-seventh interest in such joint property in lieu of the one-third she was then claiming, he would pay her the difference.

The next assignment of error is based on the clause in the contract wherein it was agreed that if either party should thereafter desire to obtain a divorce, the other party would not appear therein for the purpose of claiming any financial benefit or make a defense to such action for divorce. This clause in the contract as between Huber and his wife is against public

policy and void. It is, however, severable from the terms of separation and property settlement which were valid and enforceable, and did not render the entire agreement void even as between husband and wife. It must be borne in mind that the clause in this contract which is claimed to be against public policy is void is in a contract between Huber and his wife, in which Culp had no interest except that the suit for the alienation of the affections of Mrs. Huber should be dismissed. There was no evidence which tended in the least to connect Culp with the agreement of separation, or the promise that neither should appear and contest a divorce. The subject of a possible divorce was never discussed between plaintiff and Culp. Where, in the same instrument, there are legal and illegal covenants, the performance of those which are legal may be enforced, although the performance of those which are illegal may not. This subject was decided in the cases of *Livingston v. Chicago & M. W. Ry. Co.*, 142 Iowa, 404, 120 N. W. 1040; *Smith v. Corbin*, 135 Ky. 727, 123 S. W. 277; *Kistler v. Heartburg et al.*, 81 Kan. 191, 105 Pac. 1117; *King v. Mollohan*, 61 Kan. 683, 60 Pac. 731.

We can see no merit in the claim that Culp is entitled to avoid his promise on the theory that a separate and independent contract, entered into between Mrs. Huber and her husband, was contrary to public policy. He had no interest whatever in that contract, except the agreement to dismiss his case. That agreement could stand independent of the clause which we hold was against public policy. There was nothing in the contract between Mrs. Huber and Culp tending to prevent oppositon to the contemplated divorce action, but the agreement which did tend to prevent opposition to the divorce was one entered into between the Hubers.

If this contract conflicted with the morals of the times or contravened any established interests of society, as deduced from the Constitution, laws and judicial decisions, it would be against public policy and void; but from an examination of this evidence

we cannot say that the agrement attempted to be enforced conflicts with the morals of the times or contravenes any established interests of society. *Hartford Fire Ins. Co. v. Chicago, M. & St. P. R. Co.*, 70 Fed. 201, 17 C. C. A. 62, 30 L. R. A. 193; *United States v. Trans-Missouri Freight Ass'n*, 58 Fed. 58, 7 C. C. A. 15, 24 L. R. A. 73; *Vidal v. Girard's Ex'rs*, 43 U. S. (2 How.) 127, 11 L. Ed. 205; *Hartford Fire Ins. Co. v. Chicago, M. & St. P. R. Co.*, 175 U. S. 91, 20 Sup. Ct. 33, 37, 44 L. Ed. 84; *State v. Coyle*, 7 Okla. Cr. 50, 122 Pac. 243; *Nichols v. Cabe*, 3 Head (Tenn.) 92; *Swann v. Swann* (C. C.) 21 Fed. 299; *Kellogg v. Larkin*, 3 Pin. (Wis.) 123, 56 Am. Dec. 164; *Richardson v. Mellish*, 2 Bing. 229 (9 Eng. Com. L.); Noyes on Intercorporate Relations, sec. 338; 9 Cyc. 482, subd. C; 15 A. & E. Encyc. 933.

The power of the court to declare a contract void as being in contravention of public policy is a very delicate and undefined power, and should be exercised only in cases free from doubt. *Richmond v. Dubuque & S. C. R. R. Co.*, 26 Iowa, 191; *Kellogg v. Larkin, supra; Smith v. Du Bose, supra;* Greenhood on Public Policy, p. 116. It was said in *Swann v. Swann, supra*:

"No court ought to refuse its aid to enforce such a contract on doubtful and uncertain grounds. The burden is on the defendant to show that its enforcement would be in violation of the settled public policy of this state, or injurious to the morals of its people. Vague surmises and flippant assertions as to what is the public policy of the state, or what would be shocking to the moral sense of its people, are not to be indulged in. The law points out the sources of information to which courts must appeal to determine the public policy of a state. The term, as it is often popularly used and defined, makes it an unknown and variable quantity—much too indefinite and uncertain to be made the foundation of a judgment. The only authentic and admissible evidence of the public policy of a state on any given subject are its Constitution, laws, and judicial decisions. The public policy of a state, of which courts take notice, and to which they give effect, must be deduced from these sources."

Whether this contract conflicts with the morals of the times, or contravenes any established interest of society, presents a very grave question when considered in the light of all the facts and circumstances. The evidence in the instant case shows that Mrs. Huber first conceived the idea of endeavoring to make a settlement of the alienation suit with her husband while in a conversation with Culp at the Savoy Hotel in Kansas City, Mo., and after such conversation left the same evening for Muskogee for the admitted purpose of making some kind of contract with him that would cause the dismissal of the alienation suit. After laboring with her husband from August until November without procuring a settlement, she returned to Kansas City. On the third day after her arrival, Culp, through his attorney at Muskogee, phoned her to return, which she did, and immediately went to the office of the attorney for a consultation with Culp. It developed at this time that Huber had offered her one-seventh of their joint property. This she refused claiming that she was entitled to at least one-third, possibly one-half of the property. It is apparent that the contract between Huber and his wife would not have been entered into had not Culp then agreed to pay the difference between one-seventh interest which had been offered, and one-third interest which she claimed. No evidence was offered that Culp suggested that as a part of the contract to settle the alienation suit, the provision relative to a separation and divorce should be included. Viewing this case from the standpoint of a demurrer to the evidence, it is doubtful and uncertain as to whether or not there is sufficient evidence in the record to have justified the trial court in declaring the contract against public policy and void. In the exercise of extreme caution, we decline to say that this contract is against public policy.

The last reason given why the demurrer should be sustained is untenable. The evidence was definite and certain that Culp was to reimburse Mrs. Huber for the amount she might lose by reason of the settlement. She testified that she had been offered

Form No. 19

one-seventh of the property held by her husband, which she claimed was their joint property, that she refused to settle for less than one-third, and that Culp had promised to pay her the difference between the one-seventh and the one-third which she claimed.

The cause should therefore be reversed and remanded for a new trial.

By the Court: It is so ordered.