## BRISCOE v. DEVONIAN OIL CO.

No. 18571. Opinion Filed Dec. 10, 1929.

Neff & Neff, for plaintiff in error.

Randolph, Haver, Shirk & Bridges, for defendant in error.

FOSTER, C. This action was commenced in the district court of Tulsa county by the plaintiff in error against the defendant in error to recover on an alleged contract for the sale of an oil and gas lease. The parties appear as they did in the trial court.

The plaintiff alleges that on or about the 12th day of November, 1925, he entered into a contract with the defendant for the sale of an oil and gas lease located in Creek county. The contract is attached to the petition and its execution is admitted. It provides that the defendant will pay the plaintiff the sum of $42.50 an acre for the lease, subject to approval of title by defendant's attorneys, and that all requirements in connection with the title that may be called for by defendant's attorneys are to be supplied by the plaintiff.

The petition further alleges that plaintiff has duly performed all the conditions on his part, and that the defendant has refused to perform its part, and prays judgment in the sum of $5,100, the amount represented by the contract.

The defendant answers by general denial, and further alleges, in substance, that at the time of the execution of this contract both plaintiff and defendant knew that there was a well being drilled on property offsetting this lease, and that both parties understood that the transaction was to be closed before the completion of the offset well, and that the plaintiff purposely delayed securing of certain requirements concerning the title, which were called for by defendant's attorneys, until after the offset well had been drilled to what was considered the paying sand, and had been proven to be a dry hole.

The testimony shows that the abstract of title was presented to lefendant's attorneys on November 13th, the day after the contract was entered into, and that on November 17th, the defendant's attorneys gave to defendant a written opinion as to the title, in which several requirements were made, one of which was that a certificate as to certain probate proceedings be secured; the land having originally been allotted to a minor Creek freedman and sold through guardianship proceedings. There was also a requirement that a quitclaim deed should be secured from the allottee, who was at that time of age, and in event the quitclaim deed was secured, the requirement as to the probate proceedings would be unnecessary. It appears that on the 20th day of November, the plaintiff furnished the defendant's attorneys a further abstract of the probate proceedings and discussed with the defendant's attorneys the necessity of securing the quitclaim deed.

It is apparent from the record that the defendant desired a quitclaim deed, and that plaintiff was attempting to get defendant's attorneys to accept title without the quitclaim deed, because it was necessary for plaintiff to pay the original allottee a considerable sum for the execution of said deed. The plaintiff testifies that in the conversation with the defendant's attorney on November 20th, defendant's attorney requested that he be allowed until Monday (November 23rd) within which to further examine certain authorities concerning the probate proceedings. On November 23rd, the plaintiff was informed by some one at the office of the defendant company that the quitclaim deed would be required, and that he must furnish it on or before the next day, which was November 24th, or the deal would be off.

At the time the contract was entered into, the well offsetting the lease in question was producing considerable gas, and on November 20th this offset well was drilled into what was known as the Wilcox sand and was considered dry, thus practically condemning

the lease in question, or at least greatly reducing its value. At the time of the conversation between plaintiff and defendant's attorneys on November 20th, it appears that neither knew that a well had been drilled in.

On November 25th the abstract of title and assignment of this lease were returned to the plaintiff, and it was agreed at the trial that on and after November 25th, defendant had called the deal off, and from that date would not have accepted the title even though the quitclaim deed had been delivered.

On November 23rd, at the time plaintiff was informed he must deliver the deed the next day, he protested that it was not sufficient time, and on December 1st his attorneys wrote a letter to the defendant in which they offered to deliver the quitclaim deed as required, and on December 19th, the plaintiff delivered to the defendant the quitclaim deed which he had secured from the original allottee.

After the introduction of plaintiff's testimony, the court sustained a demurrer thereto and instructed the jury to return a verdict in favor of the defendant, and it is from this order that the plaintiff appeals.

The propositions argued in plaintiff's brief are, in substance, as follows:

First. That the record discloses that the title submitted to the attorneys for defendant was a good title, and there was no reason for requiring a quitclaim deed, and that the defendant in so requiring was acting in bad faith.

Second. That the time allowed the plaintiff to secure a quitclaim deed was not reasonable; and

Third. That the defendant made no proper tender of his part of the contract by not actually tendering the purchase money.

As this case comes to us on demurrer, it will be determined upon the general principle that all doubtful questions of fact must be resolved in favor of the plaintiff.

Under the first proposition, the plaintiff argues that, since the abstract was introduced in evidence and shows that the seller had a good merchantable title, the objections made by the defendant were frivolous, and that these facts are sufficient to be submitted to a jury on the question of good or bad faith on behalf of defendant's attorneys. We have not examined the abstract of title introduced in evidence, and do not here pass upon the question of whether or not it shows good title, as, under our holding on the second proposition presented by plaintiff, we think this question becomes immaterial.

Assuming, without deciding, that the attorney for the defendant acted in good faith, the next question is whether sufficient time was allowed the plaintiff to secure the quitclaim deed demanded by defendant's attorney. It seems to be well settled that, where a contract for the sale of property specifies no time, either party is entitled to a reasonable time within which to carry out the conditions of the contract. What constitutes a reasonable time, where facts are undisputed, is a question for the court. Spaeth v. Ocean Park Realty Co. (Cal.) 116 Pac. 980; Lewis v. Woodbine Sav. Bk. (Iowa) 174 N. W. 19. Numerous cases are cited both by plaintiff and defendant as to what constitutes a reasonable time. No general rule which will apply to all cases can be laid down. Each case must rest upon the peculiar facts and circumstances surrounding the transaction. The time allowed is so varied in the different cases presented that citations of authority seem to us unnecessary, and of very little force and effect under the peculiar facts in this case.

It is well recognized, supported by authority, and based upon reason and justice, that where the facts and circumstances surrounding the case show that the particular property covered by the contract is of fluctuating character or value, the time for the performance of the contract will be much shorter than where the property has a fixed or stable value. Many authorities are cited holding that 30 days is a reasonable time to meet requirements made in an abstract, and many cases hold that under some conditions a longer time is reasonable—sometimes a year—but, under the peculiar facts in this case, we do not believe that such authorities are controlling, or even persuasive.

Oil properties have a fluctuating value, and in the sale of oil properties, especially where an offset well is drilling and is nearing the sand that may be reasonably expected to produce oil, or to prove that no oil may be produced, a reasonable time which the courts will require within which to accept or reject a title should of necessity be much shorter than where the property has a fixed value. Nelson v. Hamra, 127 Okla. 141, 259 Pac. 838.

It is clear from the record in this case that at the time the contract was entered into, the property had a fluctuating value, that a well was being drilled on adjoining or

offset territory, and under these circumstances both parties will be presumed, as contended for by the defendant, to have contracted with the understanding that the contract would be completed before the bringing in of the well.

However, under the testimony of the plaintiff, the defendant's attorney on the 20th of November requested that he be given until Monday (November 23rd) in order to finally determine whether or not he would require plaintiff to secure the quitclaim deed. This testimony on behalf of the plaintiff is positive and undisputed. It is true that the answer of the defendant in the case is that this statement is perhaps not true, but as we are considering this case on demurrer, we must assume that defendant's attorney made this request.

On November 23rd, the well had been drilled to the Wilcox sand and had proved to be a nonproducer. At that time a definite demand was made for the deed. The allottee lived in Wagoner county, the land was situated in Creek county, and the transaction was to be consummated in Tulsa county. After the drilling in of the well, the potential fluctuating value of the lease was not nearly so great as it was at the time the contract was entered into. If the positive demand for a quitclaim deed had been made on November 20th, and 24 hours given to secure the same, it might not have been an unreasonable time. But being made three days after the well was drilled in, under all the circumstances in the case, we believe that the time given was unreasonable.

It is true that the defendant had always requested a quitclaim deed. It is also clear that the reason plaintiff did not immediately secure a deed was because of the extra amount of money he would have to pay the allottee in order to secure her signature. But we think this a legitimate excuse, so long as the defendant held out to plaintiff a probability that he might approve the title without the deed. The defendant had in its possession the assignment, and could have accepted the title and filed the assignment at any time without the deed. From the record, the plaintiff had no interest in the title held by the allottee, if any she had, and all the title of the plaintiff and those whom he represented was contained in the assignment which defendant held. These circumstances, we think, further support our finding.

The defendant contends that the plaintiff acquiesced in its refusal to accept the title by not delivering the deed for about 30 days after the final request was made. With this contention, however, we cannot agree. It was stipulated at the trial that, after November 25th, the defendant would not have accepted the title if the plaintiff had presented a quitclaim deed. About six days after the time allowed plaintiff to secure the deed, plaintiff's attorney wrote a letter informing defendant that they were ready to deliver the deed, and within less than 30 days the quitclaim deed was actually tendered. We think these circumstances show that plaintiff never acquiesced in defendant's attempted rescission of this contract.

The defendant further contends that if the plaintiff could have secured the quitclaim deed within the time allowed, it was not an unreasonable time, and to support this the defendant points out that nowhere does the plaintiff contend that it was impossible to secure the deed within the time allowed by the defendant. We do not think the rule is based upon the possibility of performing the act within the time allowed, but rather upon the reasonableness of the time under all the circumstances, and, as above pointed out, we think that the time allowed was unreasonable, although it might have been humanly possible to have secured the deed.

Plaintiff next contends that defendant made no proper tender of its part of the contract, and under this proposition argues that defendant never actually offered to pay the money if plaintiff would secure the quitclaim deed. We see no merit to this contention. We do not believe that, under the facts in this case, it was necessary for the defendant to actually offer to pay the plaintiff $5,100 until the plaintiff had supplied the reasonable requirements of defendant. It is admitted by both parties that the contract was subject to the approval of title by defendant's attorneys, and that all requirements in connection with the title that were called for by the defendant's attorneys were to be supplied by the plaintiff. This, to our minds, clearly indicates that the plaintiff must meet all the reasonable requirements by the defendant's attorneys within a reasonable time, and before the defendant had any duty to actually tender the amount agreed to be paid for the lease.

If the answer of the defendant be true, a different conclusion would perhaps be reached in this case. If we should consider the defendant's answer, a good defense is perhaps set up. In its brief the defend-

ant argues that it was the scheme of the plaintiff to delay the matter until after the well was brought in. This may be true, but we find nothing in the record to indicate the same. The plaintiff's testimony, to our minds, is clear, and under the well-recognized rule should be given every inference that might be reasonably drawn therefrom.

For the reasons herein given, we hold that the trial court erred in sustaining the demurrer to plaintiff's evidence, and the cause is therefore reversed and remanded, with directions to the trial court to overrule defendant's demurrer, and for such other action not inconsistent with the views herein expressed.

BENNETT, DIFFENDAFFER, HALL, and HERR, Commissioners, concur.

By the Court: It is so ordered.