### R. W. HART & CO. v. HARRIS.

No. 25139. Sept. 27, 1938.

Rehearing Denied Oct. 18, 1938.

Application for Leave to File Second Petition for Rehearing Denied Nov. 1, 1938.

A. C. Saunders, for plaintiff in error.

F. E. Riddle, for defendant in error.

WELCH, J. This is an appeal by R. W. Hart & Company, a corporation, plaintiff in error, defendant below, from an order of the district court of Tulsa county, Okla., granting to James A. Harris, defendant in error, plaintiff below, a temporary injunction restraining the Continental Petroleum Company from paying certain sums of money to R. W. Hart & Company, which the said James A. Harris claims as his portion of certain fees paid, or to be paid, by the Continental Petroleum Company to Hart & Company. The parties will be referred to as they appeared in the trial court.

A review of the record shows substantially the following facts:

Sometime during the spring or summer of 1929, James A. Harris consulted R. W. Hart & Company, an organization consisting of R. W. Hart, J. E. Hart, and T. C. Hart, public accountants, with regard to a claim in favor of the Continental Petroleum Company against the United States Government for the refund of certain sums previously paid as excessive income taxes. The members of the firm of R. W. Hart & Company were duly licensed to practice before the Treasury Department, and were thus in position to prosecute the claim of the Continental Petroleum Company before the department. The plaintiff, Harris, was not authorized to practice before the department, although sometime previously he had been allowed a temporary permit, which had expired.

It is the contention of the plaintiff, Harris, that at the conference referred to above he entered into a verbal agreement with

the members of R. W. Hart & Company whereby, if that firm was employed by the Continental Petroleum Company to represent it in connection with the claim mentioned, he, Harris, would participate to the extent of one-fourth in any net sums paid for its services, the payment to Harris being in consideration of his "securing said client, in furnishing data, and in securing the employment of the said Harts."

Sometime later R. W. Hart & Company was so employed by the Continental Petroleum Company on a contingent fee basis of 50 per cent. of any sums recovered through the claim in question. Harris does not appear in the contract of employment between the defendant company and the Continental Petroleum Company, though the latter company knew of Harris' connection with the matter, and of his participation.

Prosecution of the claim was begun at once, in connection with which the defendant company clearly appears to have taken advantage of the services of Harris. He made trips to Washington, where he arranged conferences, secured documents pertinent to the claim, and was generally active in the matter. His services are confirmed by letters and telegrams from the defendant company, and on one occasion it either paid or promised to pay Harris an expense account of $250, in connection with a trip to Washington.

The aggregate efforts were successful in establishing the claim of the Continental Company for a substantial refund. A part of this sum had been paid to the Continental Petroleum Company before the plaintiff, Harris, learned of the allowance of the claim. The defendant, Hart & Company, collected its part of the first payment, but paid nothing to Harris. A second installment being due, Harris brought suit on his alleged contract for a division of the compensation and for an accounting, in connection with which he further alleged that the defendant is insolvent, and asks for a temporary injunction prohibiting the Continental Petroleum Company from paying to the defendant certain sums equaling the portion of the agreed compensation claimed by Harris.

There is some conflict in the evidence. In allowing the plaintiff's application for a temporary injunction the court below found the facts in favor of the plaintiff. There is substantial evidence to support this finding, and it will not be disturbed.

A number of errors are assigned which will be considered together under defendant's contention that the plaintiff is not entitled to the aid of the courts for the reason that the contract is in violation of the regulations of the Treasury Department, and, that the contract is void as against public policy.

We take judicial notice of the Treasury Department regulations. Beck v. Johnson, 169 Fed. 154, "The state courts * * * must take judicial notice of the laws of the United States and for some purposes judicial notice will be taken of executive regulations."

The Act of Congress of July 7, 1884, 23 Stat. 258, sec. 3, authorized the Secretary of the Treasury to prescribe rules and regulations governing the recognition of persons permitted to appear as agents for others in presenting claims, and to reprimand or suspend such privilege for various causes  The regulations promulgated pursuant thereto provide for the enrolling of those permitted to so represent claimants and provide various "causes for reprimand, suspension, or disbarment." Included in such causes are the following:

"* * * Conduct contrary to the canons of ethics as adopted by the American Bar Association."

And:

"Subsection K. Sharing fees in any matter pending before the Treasury Department with an unenrolled person who is neither an attorney nor an accountant engaged in the practice of law or accountancy."

The recognizing of persons to handle claims of others is not restricted to attorneys at law, but agents, auditors, accountants, or others deemed to possess qualifications and ability to understand the questions involved, and to render such services may be, and are so recognized and enrolled. While persons so enrolled may occupy a position somewhat similar to attorneys at law when they are appearing before the Treasury Department and its agencies, they are not, by reason of such recognition or enrollment, attorneys at law for all purposes. R. W. Hart & Company was a partnership of public accountants, and as such they make various contracts with their customers, employers, or clients. Those contracts, even though they involve presentation of claims before the Treasury Department, are not necessarily to be measured exactly as contracts between attorneys at law and their clients. As to presentation of such claims, an auditor might be able to contract with a claimant before

presenting himself for enrollment, and might thereafter obtain permission, temporary or otherwise, to be permitted to handle the claim before the Treasury Department.

It is not necessary that we here undertake to state all of the distinctions that might be made between the status of an attorney at law contracting in reference to litigation, or contracting with and representing his clients, and the status of an auditor, accountant, or other person who might contract with reference to claims for tax refund and present them to the Treasury Department. It is enough for the purpose of this action that we observe that the status is not the same.

We observe, of course, that the defendant, Hart & Company, may, if the interested authorities deemed it proper, be reprimanded by the Treasury Department, or suspended from practice before the Treasury Department, for division of compensation with one not enrolled as permitted to practice before the department. However, no direct authority is presented justifying a contention or conclusion that for that reason this contract should be held void as against public policy.

The defendant, Hart & Company, cites many authorities supporting the general rule that one who makes a contract prohibited by law may not enforce it. They also cite authorities supporting the rule that one who is a layman and not a lawyer may not legally contract to render services as an attorney at law, and that if he does so, his contract is unenforceable. We agree with those rules and those decisions, but we do not agree that they are applicable. Defendant contends that by the contract here sued upon the plaintiff, Harris, was directly undertaking to represent the taxpayer before the Treasury Department. We do not agree with that contention. Under the contract the plaintiff, Harris, was to render services and assistance to the defendant, Hart & Company. He rendered those services and they were of value.

The defendant, Hart & Company, contends that the contract with plaintiff, Harris, is wholly void and against public policy. However, it is our conclusion that the services rendered by Harris were not illegal, nor immoral, nor expressly prohibited by any rule or law, nor against public policy.

In Huber v. Culp, 46 Okla. 570, 149 P. 216, this court in the 6th paragraph of the syllabus said:

"Power of the court to declare a contract void as being in contravention of public policy is a very delicate and undefined power, and should be exercised only in cases free from doubt."

And in the 5th paragraph of the syllabus:

"In order to declare a contract against public policy and void, it must conflict with the morals of the times or contravene established interests of society, as deduced from the Constitution, laws, and judicial decisions."

We note this language used by the Supreme Court of the United States in Steele v. Drummond, 275 U. S. 199, 48 S. Ct. Rep. 53:

"It is only because of the dominant public interest that one who has had the benefit of performance by the other party is permitted to avoid his own obligation on the plea that the agreement is illegal."

The same court in Black & W. Taxicab & T. Co. v. Brown & Y. Taxicab Co., 276 U. S. 518, 528, 48 S. Ct. 404, 407, 72 L. Ed. 681, 57 A. L. R. p. 426, quoting from pages 403, 431, said:

"Care is to be observed lest the doctrine that a contract is void as against public policy be unreasonably extended. Detriment to the public interest is not to be presumed in the absence of showing that something improper is done or contemplated. Steele v. Drummond, November 21, 1927, 275 U. S. 199, 48 S. Ct. 53, 72 L. Ed. 238. And it is to be remembered, as stated by Sir George Jessel. M. R., in Printing & Numerical Registering Co. v. Sampson, L. R. 19 Eq. 462. 465, 21 Eng. Rul. Cas. 696, that public policy requires that competent persons 'shall have the utmost liberty of contracting and that their contracts, when entered into fairly and voluntarily, shall be held sacred, and shall be enforced by courts of justice.'"

Upon proper application of the rules governing the legality of contracts, and contracts which are void as against the public policy, including the rules above quoted, then

"Whether a contract is against public policy is a question of law for the court to determine from all the circumstances of the case." 13 C. J. 427, par. 366.

The trial court did not observe any such illegality in the contract as would permit the defendant, Hart & Company, after accepting the benefits of full performance, to avoid the liability of the promised compensation, and we agree with that conclusion.

The judgment of the trial court is affirmed.

OSBORN, C. J., and PHELPS, CORN, GIBSON, and DAVISON, JJ., concur. BAYLESS, V. C. J., and HURST, J., dissent. RILEY, J., absent.