CAMP et al. v. BLACK GOLD PETROLEUM CO.

No. 29870. Nov. 12, 1941.

Rehearing Denied Dec. 16, 1941.

*119 P. 2d 815.*

Frank M. Bookstore, of Oklahoma City, for plaintiffs in error.

J. Forrest McCutcheon, of Oklahoma City, for defendant in error.

DAVISON, J. This action involves the recovery of money alleged to be due under a contract for the sale of an oil and gas mining lease covering lots 36 and 37, block 6, Irvington addition to Oklahoma City.

Years before this controversy arose, John P. Camp, one of the plaintiffs in error, was the owner of the fee-simple title to the lots. When the defendant in error began its negotiations for an oil and gas mining lease on the premises, Camp's title thereto was encumbered by a tax resale deed previously executed and delivered to one L. May Collins, who is one and the same person as Lydah May Collins.

On November 26, 1935, Lydah May Collins and James F. Collins executed and delivered to the defendant in error an oil and gas lease covering their purported interests in the lots.

In February, 1936, Camp entered into a contract whereby Oscar John Grace and Andrew T. Cole, the other plaintiffs in error, were to clear the title to said lots for an interest in them.

Thereafter, on April 13, 1936, the defendant in error entered into a contract with plaintiffs in error to purchase from them an oil and gas mining lease on the lots, and therein agreed that in the event the latter obtained good and merchantable title to the mineral rights in said lots free and clear of the claims of all other persons, including Lydah May Collins, it would pay plaintiffs in error a bonus in the sum of $1,000 in addition to the bonus to be prescribed in the lease.

Pursuant to said agreement, Camp, on May 14, 1936, executed and delivered to defendant in error an oil and gas lease covering the lots, and the other plaintiffs in error instituted an action in Camp's name, as plaintiff, to quiet his title to said lots. A judgment was rendered in said action on November 5, 1937, declaring void the tax resale deed of Lydah May Collins and quieting Camp's title to the lots against all claims of the said Lydah May Collins, James F. Collins and Black Gold Petroleum Company, or anyone claiming by, through, or under them except such rights as said petroleum company claimed through and by virtue of Camp's title.

Thereafter, plaintiffs in error made due demand upon the defendant in error for payment of the extra bonus said company had agreed by its contract of April 13, 1936, to pay them for the oil and gas lease on the lots when they had obtained a good and merchantable title to the mineral rights therein. Upon said company's refusal to comply with their demand, plaintiffs in error instituted the present action to compel it to do so. Said parties will hereinafter be referred to by their trial designations of "plaintiffs" and "defendant."

The cause was tried by the court without a jury.

One of the two defenses specially pleaded, and the only one that the defendant relied upon until plaintiffs had rested, was its claim that the contract by which Camp procured the assistance of the other plaintiffs in clearing his title was illegal and contrary to public policy, and that the contract sued upon was likewise illegal and unenforceable. Upon this ground the defendant demurred to plaintiffs' evidence. When the trial judge thereupon suggested the matter by an inquiry concerning the pleadings,. counsel for the defendant then predicated his demurrer upon the further ground of asserted delay on the part of plaintiffs in obtaining good and merchantable title to the lots as they had agreed to do in the contract sued upon. Upon the basis of his opinion that in failing to secure the judgment quieting title to the lots in question until November 5, 1937, plaintiffs had not

fulfilled their obligation under the contract within a reasonable time after its execution, the trial judge sustained defendant's demurrer to plaintiffs' evidence and entered judgment dismissing the action. In this appeal plaintiffs seek a reversal of said judgment.

In their briefs, neither of the parties question the correctness of the trial court's view that, since the contract in question specified no certain time within which plaintiffs were to cure the defects in the title to the lots, they had a reasonable time within which to do this. Plaintiffs take the position, however, that the trial court's opinion that they did not perform this contractual obligation within such a time is erroneous under the facts of this case. With this we must agree.

It is conceded that there is no general rule by which the question of what is a reasonable time for the performance of contracts may be determined, and that such determination must be governed by the specific facts and circumstances of the particular case under consideration. See Briscoe v. Devonian Oil Co., 140 Okla. 248, 282 P. 1101, 1102. The defendant relies to a great extent upon the fact that the contract involved oil property, and that the courts, upon consideration of the fluctuating value of such property, have recognized that what might be considered a reasonable time for fulfilling a contract with reference to property of a constant or slowly fluctuating value cannot generally be so considered in cases involving property of such a rapidly fluctuating character. To demonstrate the asserted importance of this factor in the present case, our attention is called to the proof that by the time Camp's lease had been executed and delivered to the defendant, or within a month after the execution of the contract sued upon, and more than a year before plaintiffs, pursuant thereto, had obtained the judgment of November 5, 1937, the mineral value of the lots had been rendered extremely questionable by the "poor showing" of a well that had been completed near them. The defendant says it must be presumed that at the time the agreement in question was entered into, the parties to it contemplated that it should not require more than two or three months to prosecute to a final judgment a suit to quiet Camp's title to the lots. The indulgence of such a presumption would not strengthen the defendant's position, for it precludes any assumption or supposition that the parties intended or contemplated that such a decree or judgment should be obtained prior to the completion of the well whose outcome and effect upon the mineral value of the lots is said to have rendered unreasonable the period that elapsed between April 13, 1936, when plaintiffs contracted to obtain good title to the lots, and the date this was concededly accomplished by the decree of November 5, 1937.

Nor do we find any other considerations to support a conclusion that said judgment or decree was not obtained within a reasonable time under the circumstances of this case. No circumstance constituting a reason or necessity for the decree to have been obtained before November 5, 1937, is cited by counsel for the defendant. It is not claimed that defendant was in any way prejudiced by plaintiffs' asserted delay in obtaining it. Counsel for the plaintiffs point out that long before said decree was obtained, the defendant was protected in its ownership of a 7/8 working interest in the oil and gas lying in and under the lots by a lease from the only individuals whose claims are shown to have cast a cloud upon the fee-simple title thereto, and that therefore there was no necessity of any particular haste or dispatch in securing it. The defendant does not assert that before said decree was entered it was unable to do anything with the lease that it could have done afterward.

The conclusion we have reached is further supported by the fact that no objection to nor criticism of the length of time consumed in obtaining the decree was ever made by the defendant to the plaintiffs. For all that appears from the record, the first time that it ever occurred to any of the officers, agents,

or employees of said company to charge the plaintiffs with any delay in fulfilling their obligation under the contract was when the matter was suggested to said company's attorney at the trial of the cause as hereinbefore shown. On the other hand, the undisputed testimony reveals that after the contract was executed, the defendant company proceeded with its preparations to drill a well on the lots in question to the extent of erecting a derrick and moving equipment thereon without indicating in any manner whatsoever that its rights and interest in the lot were immediately endangered by the condition of plaintiffs' title. By his statements to the plaintiff Cole, when he accepted Camp's lease on behalf of the company in May, 1936, its admitted agent and employee, Mr. Galbraith, indicated that the only reason his company had then ceased its operations was the "poor showing" made by another well which had been completed near the lots, apparently subsequent to the execution of the contract in question.

In view of the undisputed facts and circumstances to which we have alluded and the absence of sufficient evidence to support a decision to the contrary, we are of the opinion that the trial court's judgment in favor of the defendant cannot be sustained on the ground that plaintiffs breached the contract sued upon by failing to obtain the decree of November 5, 1937, before said date.

Nor do we think said judgment can be sustained on the ground that the contract itself was illegal. The defendant's claim that said contract was illegal is based upon the assertion that it contemplated fulfillment of the contract of February, 1936, by which Cole and Grace agreed with Camp to clear his title to the lots in question, which defendant says is illegal because it provided for the rendition by Grace and Cole, who are not attorneys, of services to Camp which, under our statutes, could be lawfully performed only by licensed attorneys. The proposition that no action can be maintained on a contract that is forbidden by law is beyond dispute, but the only authority cited to demonstrate that the contract in question is of such a character is the opinion of this court in the case of Crawford v. McConnell, 173 Okla. 520, 49 P. 2d 551. While the contract entered into by the plaintiffs among themselves in February, 1936, does not possess the characteristics which were specifically described as rendering illegal the contract considered in the cited case, we do not think the question of its validity is directly involved in the present action and therefore express no opinion thereon. In this case, plaintiffs' right to recovery is based solely upon their contract with the defendant. It is not claimed to be illegal in itself, and recovery may be had thereon without resort to any contract that plaintiffs may have entered into among themselves. Thus this case can be definitely distinguished from the case above referred to, in which it was emphasized that the right to the relief therein sought was dependent upon the validity of a contract that was contrary to public policy. The power of the courts to nullify contracts made in contravention of public policy should be exercised with caution and restraint, and only in cases that are free from doubt. Hart & Co. v. Harris, 183 Okla. 588, 83 P. 2d 565; Huber v. Culp, 46 Okla. 570, 149 P. 216. It will not prevent enforcement of a lawful agreement which is only incidentally and indirectly connected with an allegedly illegal contract where, as in this case, the lawful contract is supported by an independent consideration and can be proved without the aid of any illegal contract. Illinois Bankers' Life Ass'n v. Brydia et al., 180 Okla. 436, 70 P. 2d 73. In view of the foregoing considerations, the asserted illegality of the contract that the plaintiff Camp entered into with the other plaintiffs in February, 1936, constituted no justification for denying said plaintiffs' recovery upon their contract with the defendant. In accord with this conclusion and the one hereinbefore announced regarding the other argument

advanced in support of the trial court's judgment, said judgment is hereby reversed and said court is directed to vacate same and proceed in a manner not inconsistent with the views herein expressed.

WELCH, C. J., CORN, V. C. J., and RILEY, OSBORN, GIBSON, HURST, and ARNOLD, JJ., concur. BAYLESS, J., absent.