LEWIS D. GREENE, in equity,

*vs.*

WILLIAM M. NASH, and others.

Washington.    Opinion December 8, 1892.

*Agent.    Transfer of Stock.    Public Policy.    Maine Shore Line Railroad.*

An agent acting under general authority binds his principal by any act done within the scope of his employment.

Where the agent is clothed with full and complete power, unlimited, to do any and all things that the principal could do if personally present, and to perform any and all acts in and about his business and property of all kinds, and to do all things and act in his behalf in all matters the same as he would do if present in his own person, giving and granting unto him, his said attorney, full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully to all intents and purposes as he might or could do if personally present: *Held;* That in pursuance of an agreement to extend the old charter of the Maine Shore Line Railroad Company, and to secure aid from the County of Washington, the agent of the complainant was authorized to transfer to the defendants, in trust, the control of the outstanding stock of the company, to enable them to protect the interests of the county in accordance with the terms of a certain instrument of trust delivered to the agent; that the general power of attorney contained no special business specifically mentioned, by which it can be properly claimed that the transaction in question was outside of any special matter stated; that in the agreement between the parties for the extension of the old charter, and the benefits to be derived therefrom, there were no such acts as the court would be authorized to set aside as against public policy.

ON APPEAL.

Bill in equity heard upon bill, answer and proof on appeal by plaintiff from decree of the court below dismissing the bill.

The case appears in the opinion.

*George M. Hanson* and *Edgar Whidden,* for plaintiff.

*A. MacNichol* and *L. G. Downes,* for defendants.

FOSTER, J.    This is an appeal from the decision of the presiding justice dismissing the complainant's bill.

By an act of the legislature approved March 4, 1881, a charter was granted to the Maine Shore Line Railroad Company to build a railroad from Bangor to Calais; this charter expired February, 1883, because work was not begun in accordance

with its terms, but was extended by act approved January 24, 1883, until February 1, 1887, and was again extended by act of January 28, 1887, to January 28, 1891, in which authority was granted to transfer the road between Bangor and Hancock Point to the Maine Central Railroad Company, which was done.

It appears that the controlling interest in the proposed road during the greater portion of this period had been in the complainant or those representing him, and that during all these years the people of Washington county had been anxious to have the road built. In 1890 they concluded that the road would not be constructed so long as the control and management continued in the complainant, and thereupon a number of business men of that county who are interested in its development by means of railroad facilities, met at Augusta at the commencement of the legislative session of 1891, with the purpose of obtaining a new charter free from any control or interests of this complainant, in order that aid might be voted by the county to secure the construction of the road, and also to secure legislation authorizing the county to vote such aid. J. N. Greene, the father of the complainant, acting under a general power of attorney from his son, was present at a meeting of the parties who favored a new charter, addressed the meeting, and then and there suggested that if those representing the interests of the county would accept an extension of the old charter and have the county vote aid to build the road, he would place the control in the hands of any men whom the meeting or county delegation might name, those men to hold a majority of the outstanding stock by transfer from the complainant. It was finally decided to accept the proposition, and all effort to obtain a new charter was abandoned; the old charter was extended and an act was passed and approved March 20, 1891, authorizing the county to aid the road.

In pursuance of this agreement to extend the old charter and to secure aid from the county, the complainant, by J. N. Greene who assumed to act as his duly authorized attorney, transferred to the defendants, in trust, the control of the outstanding stock, —being 2000 shares out of 3616,—to enable them to protect the

interests of the county, as set forth in the following instrument:
"Whereas Lewis D. Greene has this day conveyed to Wm. M.
Nash, Austin Harris, Lemuel G. Downes, John K. Ames and
Benjamin Lincoln, as trustees, two thousand shares, of the stock
of the Maine Shore Line Railroad Company. Now, therefore,
the conditions of said trust are as follows, viz: Said trustees to
have the exclusive right to vote on said stock at any meeting of
the stockholders thereof as they may deem best for the interests
of said Washington County, State of Maine, said Company.
They are not to sell, hypothecate, pledge, transfer or assign any
part of said 2000 shares until said railroad shall be completed
between the termini named in said company's charter, and when
so completed and in running order, said trustees or their suc-
cessors shall convey all of said 2000 shares to said Lewis D.
Greene or his legal representatives. Vacancies in said trustees
by death, resignation or otherwise to be filled by the surviving
or remaining trustees. Witness our hands this 26th day of Jan-
uary, A. D., 1891, at Augusta, Maine, interchangeably. [Signed]
Wm. M. Nash, Austin Harris, Lemuel G. Downes, John K.
Ames, Trustees as aforesaid.

"Lewis D. Greene, by J. N. Greene his attorney."

In further pursuance of the agreement for renewing the char-
ter and securing aid from the county, the defendants and the
directors of the road, including J. N. Greene, united in issuing
an address to the people of the county favoring the voting of
aid to the road. The people of the county thereafterwards voted
on the proposition submitted to them by virtue of the act of the
legislature, the whole number of votes cast being 5398,—4119
in favor, and 1279 against granting aid.

The county having thus voted aid to the road, the annual
meeting of the company was held June 3, 1891, and a re-organ-
ization of the Board of Directors was made at that meeting to
protect the interests of the county, J. N. Greene being present,
acting under his power of attorney from the complainant, and
fully concurring in all the acts done. He acquiesced in all the
transactions of the trustees and directors up to the time when
this bill was brought.

Still later, on July 17, 1891, the complainant and one R. B. Greene entered into a contract in writing for the construction of the Maine Shore Line Railroad "from the Bar Harbor Branch of the Maine Central Railroad in the town of Hancock, State of Maine, to Calais, Maine, and Eastport, Maine."

The complainant now seeks to have the 2000 shares of stock re-assigned and delivered back to himself, and the instruments purporting to create a trust set aside, cancelled and given up — on the ground, as it is alleged, that J. N. Greene had no authority as agent of the complainant, to make the transfer to these defendants — that the consideration, if any, was a promise of aid in securing from the legislature an extension of time for the construction of the road, and was therefore void as against public policy.

But we do not think the complainant is entitled to equitable relief upon either ground.

The two instruments introduced, bearing date December 29, 1884, and March 3, 1887, respectively, are general powers of attorney from the complainant to J. N. Greene, both under seal and acknowledged, and are sufficiently broad and comprehensive to embrace the transactions between the attorney and these defendants. They confer full and complete power, unlimited, to do any and all things that the principal could do if personally present, and to perform any and all acts in and about his business and property of all kinds, and to do all things and act in his behalf in all matters the same as he would do if present in his own person; giving and granting unto him, his said attorney, full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes, as he might or could do if personally present, etc.

It is difficult to imagine a more general, sweeping and comprehensive power of attorney than was conferred by this complainant. There is no special business named by which it can be properly claimed that the transaction in question was outside of the special matter stated. The authorities relied on by the

complainant, when examined, will be found to apply only where some special business or employment was referred to in the general power of attorney, and not to a case like the present where no particular business is mentioned, either expressly or by implication.

It is a familiar principle of law requiring no citation of authority, that an agent acting under general authority binds his principal by any act done within the scope of his employment. There can be no doubt that the power of attorney relates to the business of the Maine Shore Line Railroad. The complainant's bill in express terms recites the fact that the agent was acting under the power of attorney in going to Augusta, to obtain, if possible, from the legislature the passage of a bill to extend the time for the location and construction of the road. He had full and complete power to do whatever was deemed necessary in reference to accomplishing that object. This agent, as the case shows, for many years had acted as the authorized attorney of the complainant in the business of the Maine Shore Line Railroad, and had transferred other stock for the complainant. If by any means it could be said that the agent exceeded his authority, or that the power of attorney was not sufficiently broad to embrace the transaction in question, there is very strong evidence of ratification of his acts by the complainant,—but we do not consider it necessary to discuss that question.

Nor do we discover anything whereby the transactions between the parties should be set aside as being against public policy.

A railroad is of a public nature. Whatever was done, as it appears from a careful examination of the case, by which the building of this road would be promoted, seems more in favor of public policy than against it. The people of Washington county were anxious to have the road built. For years they had acquiesced in the efforts of J. N. Greene until they thought they saw no prospect under his management, and hence the movement by the people of the county for a new charter in order to get a road built. The transfer of a majority of the stock of the old corporation to trustees was for the protec-

tion of the county, and not for the particular interest or benefit of individuals, or those acting as trustees. It was in pursuance of such protection that the county voted the aid asked for, and with the understanding that its interests would be protected by the trustees. There does not appear to have been any improper influence used, or attempted, to influence legislation in relation to the matter. Everything seems to have been done in the interest of the public rather than against it. A petition for a new charter had been presented by the people of the county for the purpose of insuring the building of the road which the public demands required. The whole transaction, viewed in the light of the circumstances attending it, was only an agreement for the withdrawal of this petition and an extension of the old charter to avoid a contest, and upon terms which were in the interest of all parties concerned. The assignment of the stock and the appointment of trustees have been followed by acts which recognize the contract as complete and valid. The county has voted aid as contemplated by the act of the legislature, and this, moreover, with a full understanding that a board of trustees were to protect the interests of the public, without which, undoubtedly, it would not have been done. The court should be very careful in setting aside contracts and agreements which have been acted upon in good faith by others, and where duties and liabilities have been assumed, lest a greater injustice might thereby be done than would result if no interference were had.

*Appeal dismissed.  Decree dismissing the bill,*
*with single costs for defendants, affirmed.*

PETERS, C. J., VIRGIN, LIBBEY and WHITEHOUSE, JJ., concurred.

EMERY, J., did not sit.