## STEELE, EXECUTOR, v. DRUMMOND.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 60. Argued October 20, 1927.—Decided November 21, 1927.

1. Review by certiorari will be confined to the question on which the petition for the writ was based. P. 203.
2. It is only because of the dominant public interest that one who has had the benefit of performance by the other party, is permitted to

avoid his own contract obligation on the plea that the agreement is illegal. It is a matter of great public concern that freedom of contract be not lightly interfered with. P. 205.

3. Only in clear cases will contracts be held void as against public policy. The principle must be cautiously applied to avoid confusion and injustice. P. 205.

4. Where nothing sinister or improper is done or contemplated under the contract, detriment to the public interest will not be presumed. P. 205.

5. A contract between S and D for construction of a railroad to connect with an existing railroad and extend to a town where D owned property, contained a promise by him to procure necessary franchises and ordinances from that town, and a promise by S that he would procure the company which was to own the new line and the company owning the existing one to operate regular trains over the two roads giving to the town above referred to the same service as that had by the one where they connected. D's purpose in making and performing the contract was to enhance the value of his property by the contemplated railroad facilities. S was a stockholder of the old company and took all the stock of the new one; *Held,* that neither of the two stipulations was shown to be against public policy. P. 206.

11 F. (2d) 595, affirmed.

CERTIORARI, 271 U. S. 658, to a judgment of the Circuit Court of Appeals, which reversed a judgment of the District Court dismissing on demurrer an action brought by Drummond to recover damages for breach of a contract between him and Steele.

Jurisdiction of the District Court was founded on diversity of citizenship.

*Messrs. W. D. Thomson* and *Harold Hirsch* were on the brief for petitioner.

The contract was illegal and void in its inception, because Drummond undertook thereby to "procure" at all events and regardless of the methods that might be necessary, the passage of certain ordinances. The contract did not specify just how Drummond was to procure them, but it did bind him at all events to procure them, and

had he failed to do so, he would have breached the contract and been liable in damages, and would also have failed to obtain the enhancement to his property holdings, which was the consideration moving him to act. Agreements to procure legislation are contrary to public policy and void. *Providence Tool Co.* v. *Norris,* 2 Wall. 45; *Hazelton* v. *Sheckels,* 202 U. S. 71; *Crocker* v. *U. S.,* 240 U. S. 74; *Meguire* v. *Corwine,* 101 U. S. 108.

The contract was illegal and void in its inception, because the obligation assumed by Steele to "procure," at all events and regardless of the methods that might be necessary, action on the part of public service corporations, of which he was a stockholder and officer, whether such action was for the benefit of their stockholders or merely to protect Steele from an action for damages on his personal covenant, was contrary to public policy. In order to comply with his contract and save himself from personal liability, he might be tempted to use his vote and official position to obtain corporate action of the railroad companies that was not to the best interest of their stockholders. *West* v. *Camden,* 135 U. S. 507; *Wardell* v. *Union R. Co.,* 103 U. S. 651; *Woodstock Iron Co.* v. *Richmond,* 129 U. S. 643.

If the contract was valid, Steele's personal liability terminated when he procured the installation of service by the two railroad companies and when the newly chartered railroad company in its corporate capacity accepted a deed from Drummond, which deed contained a provision under which the entire property reverted to Drummond if service was discontinued.

*Mr. John A. Sibley,* with whom *Mr. Daniel MacDougald* was on the brief, for respondent.

The contract is not in violation of public policy. The power to declare a commercial contract invalid because it violates public policy should be sparingly exercised by

courts.    The courts will presume that the contract is valid
and that no illegal means are contemplated unless there is
something in the contract that carries a different conclu-
sion.    The only exception is in those contracts where the
general scheme is of a corrupt nature.    *Richardson* v.
*Mellish,* 2 Bing. 229.

This Court fully recognized in the case of *Valdes* v.
*Larrinaga,* 233 U. S. 705, that all contracts between parties
the purpose of which is to obtain a concession from the
Government or of a department thereof, are not invalid.
See *Noble* v. *Meade-Morrison Mfg. Co.,* 237 Mass. 5;
*C. C. Cole* v. *Brown-Hurley Hardware Co.,* 139 Ia. 487;
*Burbank* v. *Jefferson City Gaslight Co.* 35 La. Ann. 444;
*Greene* v. *Nash,* 85 Me. 148.

Since the rendition of the decision in the case of *Tool
Company* v. *Norris,* 2 Wall. 45, this Court has permitted
contracts to stand, which under the broad language of the
*Norris* case would have been struck down.    See *Nutt* v.
*Knut,* 200 U. S. 12; and *McGowan v. Parish,* 237 U. S. 285.

The contract was not illegal and void from its inception,
as contended.    This is not a contract where an officer of a
corporation agrees in consideration of a benefit to him to
have the corporation of which he is an officer employ a
third party; nor is it a contract in which one who occupies
a fiduciary position, in consideration of a private benefit to
himself, assumes an inconsistent position towards another;
nor does it create a dual agency whereby an agent obtains
secret profits at the expense of the principal.    In essence
it is an agreement by one person to protect the capital
investment of another, under certain contingencies.
These agreements are universally upheld by the courts.
*Morgan* v. *Stuthers,* 131 U. S. 246; *Rogers et al.* v. *Burr,*
*Administratrix,* 97 Ga. 10; *Vinton* v. *Pratt,* 228 Mass. 468;
Cook on Corporations, 8 Ed. Vol. 2, pp. 1227, 1228, 1229.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Respondent sued in the district court for the northern district of Georgia to recover damages for breach of contract. A general demurrer was interposed and sustained. The Circuit Court of Appeals held that one count stated a cause of action and reversed the judgment. The petition for certiorari was based on the contention that the contract in suit was contrary to public policy and void. No other question will be considered. *Alice State Bank v. Houston Pasture Co.*, 247 U. S. 240, 242; *Webster Co. v. Splitdorf Co.*, 264 U. S. 463, 464.

The material allegations are: Panama City and St. Andrews are adjoining municipalities in Florida. These were rival cities whose resources were timber lands and fisheries awaiting development. A. B. Steele was a stockholder in the Atlanta and St. Andrews Bay Railway Company, which operated a railroad between Dothan, Alabama, and Panama City. He was interested in a lumber company which was a large stockholder in the railway company. Drummond owned much land in St. Andrews, and some of it was on St. Andrews Bay. Steele desired to extend the railway from Panama City to the bay. Drummond was willing to cooperate with him to that end. His purpose was to enhance the value of his lands by procuring railroad facilities for St. Andrews equal to those at Panama City. Steele agreed to procure a charter for a railway company; to convey to it a right of way within Panama City; to furnish all the iron and steel for track material; to deliver the cross ties which were to be furnished by Drummond; and to procure the proposed company, in conjunction with the Atlanta & St. Andrews Bay Railway Company, to operate regular trains over

the two roads from Dothan to St. Andrews, giving the latter the same service as that had by Panama City. Drummond agreed to obtain and convey to the new company a right of way within St. Andrews, "and to procure necessary franchises and ordinances from the town of St. Andrews"; to pay the cost of clearing and grading the whole line, furnish and lay all ties, build necessary trestles and culverts, lay the rails, and put in a wye; and to cause a tract of terminal land fronting on St. Andrews Bay to be conveyed to the new company. Steele procured the charter; organized a company and became owner of all its stock. And, at his instance, Drummond conveyed the completed railroad to the new company. Steele caused the railway service to be furnished as agreed until August, 1921, when operation ceased. Service at Panama City continued. Except for the covenant in respect of service for St. Andrews, Drummond would not have made the contract. This was known to Steele. And it is alleged that to perform on his part, Drummond expended $53,178.11; and that, by reason of Steele's failure to cause continuous service, Drummond's expenditures became a total loss.

Petitioner contends that the contract is illegal and void because respondent's undertaking to procure the passage of the ordinances was contrary to public policy. In *Marshall* v. *Baltimore and Ohio Railroad Company,* 16 How. 314, Mr. Justice Grier, delivering the opinion of the Court, said (p. 334): "It is an undoubted principle of the common law, that it will not lend its aid to enforce a contract to do an act that is illegal; or which is inconsistent with sound morals or public policy; or which tends to corrupt or contaminate, by improper influences, the integrity of our social or political institutions. . . . Public policy and sound morality do therefore imperatively require that courts should put the stamp of their

disapprobation on every act, and pronounce void every contract the ultimate or probable tendency of which would be to sully the purity or mislead the judgments of those to whom the high trust of legislation is confided." And then, to make distinction between legitimate action and the contract condemned in that case, it is said: "All persons whose interests may in any way be affected by any public or private act of the legislature, have an undoubted right to urge their claims and arguments, either in person or by counsel professing to act for them, before legislative committees, as well as in courts of justice." While the principle is readily understood, its right application is often a matter of much delicacy. It is only because of the dominant public interest that one, who has had the benefit of performance by the other party, is permitted to avoid his own obligation on the plea that the agreement is illegal. And it is a matter of great public concern that freedom of contract be not lightly interfered with. *Baltimore & Ohio Southwestern Ry.* v. *Voigt,* 176 U. S. 498, 505. The meaning of the phrase "public policy" is vague and variable; there are no fixed rules by which to determine what it is. It has never been defined by the courts, but has been left loose and free of definition, in the same manner as fraud. 1 Story on Contracts, (5th ed.) § 675. *Pope Mfg. Company* v. *Gormully,* 144 U. S. 224, 233. It is only in clear cases that contracts will be held void. The principle must be cautiously applied to guard against confusion and injustice. *Atlantic Coast Line R. R. Co.* v. *Beazley,* 54 Fla. 311, 387; *Barrett* v. *Carden,* 65 Vt. 431, 433; *Richmond* v. *Dubuque & Sioux City R. R. Co.,* 26 Ia. 191, 202; *Egerton* v. *Earl Brownlow,* 4 H. L. Cas. 1, 122; *Richardson* v. *Mellish,* 2 Bing. 229, 242, 252. Detriment to the public interest will not be presumed where nothing sinister or improper is done or contemplated. *Valdes* v.

*Larrinaga,* 233 U. S. 705, 709. The contract here under consideration is to be distinguished from those dealt with in *Tool Company* v. *Norris,* 2 Wall. 45; *Trist* v. *Child,* 21 Wall. 441; *Meguire* v. *Corwine,* 101 U. S. 108; *Oscanyan* v. *Arms Company,* 103 U. S. 261; *Hazelton* v. *Sheckells,* 202 U. S. 71, and *Crocker* v. *United States,* 240 U. S. 74. The claims there considered were under contracts requiring or contemplating the obtaining of legislative or executive action as a matter of favor by means of personal influence, solicitation and the like, or by other improper or corrupt means.

But this case is different. Drummond was not employed by Steele or by the railroad company to secure the passage of the ordinances. He was interested as an owner of property. Neither the contract, nor what was done, suggests that the location or construction of the proposed line was not a legitimate enterprise undertaken for the public good, or that anything improper was contemplated as a means to secure the passage of the ordinances. Drummond's object was to obtain the railway service; and, for that purpose, he expended a large sum. The mere fact that he owned property that might be favorably affected does not tend to discredit him or to make evil his undertaking to obtain the ordinances. His interest in having the railroad extended into St. Andrews gave him the right in every legitimate way to urge the passage of appropriate ordinances. There is nothing that tends to indicate that in the promotion or passage of them there was any departure from the best standards of duty to the public. The contention that Drummond's agreement to secure their passage was contrary to public policy cannot be sustained. *Cole* v. *Brown-Hurley Co.,* 139 Ia. 487; *Burbank* v. *Gas Company,* 35 La. Ann. 444; *Greene* v. *Nash,* 85 Me. 148. Cf. *Houlton* v. *Nichol,* 93 Wis. 393; *Noble* v. *Mead-Morrison Mfg. Co.,* 237 Mass. 5, 21.

Petitioner also contends that the contract contravened public policy and is void because Steele agreed to procure the specified service to be given St. Andrews. The argument is that, in order to keep his covenant, he might be tempted to use his vote to obtain corporate action of the railroad companies that was not to the best interest of their stockholders. But the contention has no foundation of fact on which to rest. As shown above, it must be clearly established that public policy would be violated before Steele may raise that objection to prevent enforcement of the contract. The allegations do not indicate that the carriers were not in duty bound to give equality of service to these adjoining and competing towns; and, for aught that appears, their interests would have been served best by continuing operation over the new line. It does not appear that the giving of the service would have resulted to the disadvantage of either company or its shareholders. Steele took all the stock of the new company; it does not appear that it ever had any other stockholders. The facts alleged fail to show that performance would tend to constitute a fraud upon the old company or its stockholders or tend in any degree to injure them. It would be mere speculation to say that the transaction described has any tendency to bring Steele's personal interest into conflict with his duty as a voting shareholder.

*Judgment affirmed.*