## JOHNSON v. SUNDSTRAND MACH. TOOL CO.

### No. 10755.

United States Court of Appeals
Seventh Circuit.

June 8, 1953.

Philip C. Lederer, Burton Y. Weitzenfeld, Franklin A. Cole and Lederer, Livingston, Kahn & Adsit, Chicago, Ill., for appellant.

Charles A. Thomas and Jack Arnold Welfeld, Chicago, Ill., Francis E. Hickey and Miller, Thomas, Hickey & Collins, Rockford, Ill., for appellees.

Before FINNEGAN, LINDLEY and SWAIM, Circuit Judges.

FINNEGAN, Circuit Judge.

Appellant, A. M. Johnson, seeks to reverse an order of the United States District Court for the Northern District of Illinois, Western Division, which adjudged that "his complaint and all amendments thereto be and the same are hereby stricken and that plaintiff go hence without day."

The case originated in the Circuit Court of Winnebago County, Illinois, from whence it was removed to the District Court because of diversity of citizenship. After causing the transcript of record to be filed in the District Court, the defendants moved in that court that the complaint be stricken stating that: (1) the complaint fails to allege a cause of action; (2) that the pleadings are vague, indefinite and general; (3) that plaintiff seeks to vary the terms of a written contract by parol; and (4) that it would be contrary to public policy to enforce the contract. Before this motion to strike was argued and plaintiff procured from the District Court leave to amend its complaint, the motion to strike was ordered to stand to the complaint as amended.

On hearing of the motion and consideration of the briefs and arguments by the respective parties, the District Court entered the order from which this appeal is prosecuted.

As amended, the complaint contains eight counts: The first count alleges that on January 2, 1941, Johnson entered into a written contract with defendants (a copy of which is attached to complaint and marked exhibit 1) under the terms of which contract Johnson was to devote his entire time as a salesman for the appellees, Sundstrand Machine Tool Company and American Broach and Machine Company, in a certain defined territory for a salary plus commission on sales. The written contract of January 2, 1941, provided in part as follows:

"11. Either party to this Agreement may cancel same by giving notice in writing to the other party, termination under such circumstances to be effective on the first day of the month occurring after the date of notice.

"12. This Agreement continues in full force and effect for a period of one (1) year from January 2, 1941, and thereafter yearly unless terminated by either party as provided in clause 11."

In December of 1941, while said contract was in full force, Sundstrand requested Johnson temporarily to leave his employment with them and accept a civil service position which had been offered by the United States Office of Production Management as Sundstrand's contribution to the war effort. Johnson objected because of the great financial loss involved in such a change. In order to overcome the objections of Johnson, Sundstrand made a verbal contract with Johnson by which it promised that, it would:

"at the end of the year 1942, unless it would then be illegal to do so, pay

plaintiff an amount equal to the difference between the amount of commissions plaintiff would have earned during the year 1942, pursuant to the terms of said written contract, from orders obtained during the year 1942 for products of defendant Sundstrand and products of its subsidiary, American Broach, in the territory assigned to plaintiff by said written contract, if, pursuant to the terms of said written contract, plaintiff had continued to act in the capacity of Direct Sales Representative and Sales Engineer in said territory during the year 1942, less the expense required to service said territory in 1942, and thereafter all commissions plaintiff would have received under the provisions of the aforesaid written contract on orders taken for products of defendants in the territory described in the written contract referred to herein during the year 1942 but shipped and billed thereafter had plaintiff's employment with defendants terminated on January 1, 1943."

The consideration running to defendants as expressed in the complaint consisted of Johnson's promise to:

"temporarily leave his employment with defendant Sundstrand and its subsidiary, American Broach, and accept said civil service position, and to refrain from severing all of his connections with defendant Sundstrand and its subsidiary, American Broach, and to refrain from giving notice of termination of the signed written contract, copy of which is attached hereto as Exhibit 1, pursuant to the terms hereof, and to refrain from seeking lucrative private employment elsewhere in a similar capacity with some other manufacturer of machine tools covering either the same or other territory, and in consideration of the benefits defendant Sundstrand and its subsidiary, American Broach, would derive and could expect to derive as the result of having contributed plaintiff's services to the war effort, in good will during the time plaintiff would remain in the employ of the United States Government, and in good will and financially thereafter."

Plaintiff accepted this offer and worked for the Office of Production Management during 1942 and claims, under the terms of the contract set forth in count 1, $198,000 from Sundstrand alone based upon the combined sales of Sundstrand and the American Broach.

Count 2 alleges that the oral contract as above stated was made by both Sundstrand and American Broach on the one hand and Johnson on the other and demands judgment in the amount of $198,000, based upon the combined sales of Sundstrand and American Broach, against both and each of them.

Count 3 demands judgment for $198,000 (based upon the combined sales of defendants) against Sundstrand and American Broach and each of them and avers that said contract was made by defendant Sundstrand for itself and as agent of American Broach.

Count 4 sets forth the aforesaid oral contract between Johnson and Sundstrand and seeks damages of $178,500 predicated only on sales of products of Sundstrand alone.

Count 5 of the complaint, as amended, sets forth the written contract referred to above, a request of defendants made in December 1941, while said written contract was in full force and effect, that Johnson leave temporarily his employment with defendants and accept a civil service position with the Office of Production Management during the year 1942, that in December 1941 Johnson and defendants entered into a verbal agreement as follows:

"In consideration of plaintiff's promise to refrain from actively devoting his time and abilities to the promotion and sales of defendants' products in the territory referred to in the written contract attached hereto, and to accept said Civil Service position and to remain an employee of the Office of Production Management during the entire year 1942, defendants or either of them promised that the terms of the afore-

said written contract, except the requirement of paragraph 2 thereof, should remain in full force and effect to and including January 1, 1943, and that unless at the times the commissions payable to plaintiff thereunder became due it should be illegal for plaintiff to accept or defendants to pay said commissions, plaintiff should receive from defendants or either of them all of the commissions payable to him under said contract on orders taken during the year 1942 on the products of defendants in the territory described in said written contract less the expense of servicing the territory referred to in the aforesaid written contract during the year 1942."

Count 6 sets forth the written contract referred to above, the request of December 1941 that Johnson serve in the Office of Production Management, his objection thereto and avers that defendants agreed to waive the provisions of paragraph 2 of the written contract (Exhibit 1) by which plaintiff promised to devote his entire time and ability to the performance of defendants' work if plaintiff would accept the position with the Office of Production Management during the year 1942. This plaintiff did, and damages of $200,000 are sought against both or either of the defendants.

Count 7 alleges the written contract heretofore referred to, avers a request by defendants, both or either, that Johnson refrain from promoting the sale of defendants' products and from otherwise complying with the provision of the written contract, that he devote his full time to the promotion of defendants' products and that he serve in the Office of Production Management. Count 7 further avers that the following agreement was made:

"A. Plaintiff would refrain from devoting his time to the promotion of sales of defendants' products as provided for in paragraph 2 of the aforesaid written agreement, and from otherwise complying with the terms of said paragraph.

"B. Instead of devoting his time as set forth in said paragraph 2 of the written agreement, he would serve the United States Government in the Office of Production Management in Washington, D. C.

"C. During the time plaintiff served the United States Government in the Office of Production Management in Washington, D. C., no salary would be paid him by defendants.

"D. In all other respects said written agreement should remain in full force and effect."

Johnson served in the Office of Production Management during the year 1942 and therefore seeks damages for unpaid commissions under the aforesaid contract.

Count 8 alleges damages in the amount of $183,600 against Sundstrand and $20,000 against American Broach alleging that the written contract (Exhibit 1) remained in effect during the entire year 1942, and that the commissions payable thereunder have not been paid.

In sustaining the motion of defendants to strike the complaint as amended, the District Court said:

"It is the view of this court that said alleged oral contract relied upon by the plaintiff is void as being against public policy inasmuch as a part of the consideration relied upon is alleged benefits that defendant would have received from plaintiff's employment in the Office of Production Management of the United States Government * * *"

It ordered that the complaint, together with all the amendments thereto, be stricken, and that the plaintiff go henceforth without day.

Appellant insists in his argument before this court that it does not appear from the complaint as amended, or any count thereof, that the contracts therein relied upon were in violation of public policy, and that in any event the entire complaint should not have been dismissed by the District Court because some of the counts of the complaint are clearly not in violation of public policy.

The appellees, on the other hand, insist that the complaint was properly stricken and the cause dismissed because it appears

from the first seven counts thereof, that the contract therein relied upon is void as against public policy.

The public policy offended in these counts according to their claim is found in section 434 of Title 18 U.S.C.A. as enacted on June 25, 1948, 62 Stat. 703, and in section 1914 of Title 18 U.S.C.A. which was likewise then enacted. 62 Stat. 793.

In view of the holding of this court in Atkinson v. New·Britain Machine Co., 154 F.2d 895, we are not greatly impressed by the appellees' contentions here.

In that case we held that where a salesman of a machine manufacturer served at nominal consideration as consultant to governmental agencies; and the government, in order to obtain maximum production, advanced a portion of purchase price of machines but manufacturer sold machines in salesman's territory only to private war industries, and, when orders were billed to individual purchasers, manufacturer collected purchase price and reimbursed government for advances, the employment contract of machine company's agent entitling him to commissions on sales in his territory was not against public policy and did not violate former section 66 of Title 5 and former sections 93 and 202 of this title, relating to government official's representation of government in matters involving private corporation in which government official has interest or a government official's receipt of consideration for procuring a contract from government or for any service rendered in relation to any such contract.

Moreover, in the case at bar, the pleadings contain no allegations that the government purchased anything from the defendants or ever did business with the defendant companies at any time. There is no statement or allegation from which it might be inferred fairly that the defendants had any dealing whatever with the Office of Production Management. There is nothing to indicate that plaintiff acted in any way in a governmental capacity with respect to contracts with the defendants.

Detriment to the public interest should not be presumed in the absence of allegations, directly charging or from which it may be inferred, that something improper is contemplated by the contract. 46 A.L.R. 205; 148 A.L.R. 770.

In Steele v. Drummond, 275 U.S. 199, 48 S.Ct. 53, 72 L.Ed. 238, a contract by the plaintiff to construct a railroad to connect with an existing railroad, and to extend it to a town where the defendant owned land, contained a provision by the defendant to procure necessary franchises and ordinances from that town and a promise by the plaintiff to procure the company which was to own the new line and the company owning the existing one to operate regular trains over the two roads. Defendant's motive in making the contract was to increase the value of his land. Plaintiff was a shareholder in the existing railway and the owner of the new road. The court held that the defendant's promise to procure the necessary franchises and ordinances was not illegal, because his interest in having the new railroad built gave him the right in every legitimate way to urge the passage of appropriate ordinances and there was nothing that tended to show that in the promotion or passage of them there was any departure from the best standards of duty to the public.

So, in Coyne v. Superior Incinerator Co., 2 Cir., 80 F.2d 844, the plaintiff's assignor, who had long been a resident of Cincinnati and acquainted with many of its officials, was employed by defendant to sell an incinerator plant to that city, his compensation to be an agreed percentage of the selling price. He was successful and was paid part of the agreed commission. It was held contingent agreements to endeavor to sell to a governmental body are not offensive to public policy merely because corrupt influences may be used; there must be proof that something contrary to good morals was contemplated or done; and there was no evidence that anything corrupt or immoral was contemplated by the parties or done by plaintiff's assignor.

The arguments filed on behalf of the respective parties made little or no mention of the eighth count of the plaintiff's amended complaint. In the view we take of the action by the District Court on the first

788

seven counts, it is unnecessary for us to discuss the final count.

Before concluding, we deem it pertinent to advise the parties to this appeal and their respective attorneys, that, in cases where an order authorizing the amendment of a complaint by the making of deletions and insertions in a count already on file is entered, courtesy dictates that the court should be furnished with a copy of the pleading as amended. Where, as in this case, this is not done, it puts the burden of making the erasures and insertions upon the District Court and upon the court of review.

The judgment of the District Court dismissing the plaintiff's complaint is reversed and the cause remanded for further proceedings.

The costs of this appeal shall be assessed against the appellant and the appellees in equal shares.