**Homer BRANCH and Lois Dell Branch, Plaintiffs,**

**v.**

**MOBIL OIL CORPORATION, and Citation Oil and Gas Corporation, Defendants.**

**No. CIV–90–723–R.**

United States District Court, W.D. Oklahoma.

Aug. 9, 1991.

Robert N. Barnes, Patranell Britten, Stack & Barnes; Gina Lynn Hendryx, John W. Norman, Norman & Edem, Oklahoma City, Okl., and Phillip R. Scott, Wanika, Okl., for plaintiffs.

L. Mark Walker, Gary W. Davis, Paul Trimble, Crowe & Dunlevy, Verland E. Behrens, and George E. Sneed, Behrens, Taylor & Dobelbower, Oklahoma City, Okl., for defendants.

## ORDER

DAVID L. RUSSELL, District Judge.

Before the Court are motions for summary judgment filed by Defendants Mobil Oil Corporation ("Mobil") and Citation Oil & Gas Corporation ("Citation"). Defendants assert that releases and easements entered into by Mobil's predecessor in interest and Plaintiffs' predecessors in interest bar Plaintiffs' claims.

There are numerous reasons why these motions for summary judgment must be and are denied.

At all pertinent times, that is, both when the releases and easements were executed and as of the date Plaintiffs' Complaint was filed through the present, pollution of the waters of the state and pollution of the

surface of land by allowing saltwater to flow over it has been prohibited or unlawful. *See* Okla.Terr.Stat. § 4162 (1890), now Okla.Stat. tit. 60, § 60; R.L.1910 § 4324, now Okla.Stat. tit. 52, § 296; Okla.Stat. tit. 82, §§ 926.2 & 926.4 (1972); O.C.C. Order No. 1299, Rule 25 (1917); Okla.Stat. tit. 52, § 309 (1970); O.C.C. General Rules 3–101 & 3–110.6 (1988).

Contracts which are contrary to an express provision of law or which are contrary to the policy of express law are unlawful. Okla.Stat. tit. 15, § 211. Contracts which have as their object, directly or indirectly, to exempt one from responsibility for his own fraud; willful injury to the person or property of another; or violation of law, whether willful or negligent, are against the policy of the law. Okla. Stat. tit. 15, § 212.

The releases and easements in issue, at least insofar as they purport to release Magnolia Petroleum Co. and its successors from liability for future pollution on behalf of the releasors' heirs, assigns and grantees, and insofar as they grant Magnolia and its successors the right to deposit in Cottonwood Creek and other creeks [1] oil waste, saltwater, etc., are contrary both to express law and to public policy implicit in express law, and have as one of their objects a violation of laws against pollution. *Accord Order, Fischer v. Atlantic Richfield Co.*, No. CIV–87–2032–A, —— F.Supp. —— (W.D.Okla. April 18, 1989).

Whether a contract is contrary to law or public policy is ordinarily a question of law for the Court. *See Hargrave v. Canadian Valley Electric Cooperative, Inc.*, 792 P.2d 50, 59 (Okla.1990) (*citing Steele v. Drummond*, 275 U.S. 199, 204–5, 48 S.Ct. 53, 54, 72 L.Ed. 238, 240 (1927)). Whether a contract is unlawful or contravenes public policy is usually determined as of the time of its making and is not affected by subsequent changes of circumstances, whether of fact or law. *Sabine*

*Corp. v. ONG Western, Inc.*, 725 F.Supp. 1157, 1183 (W.D.Okla.1989) (*citing* Comment d, *Restatement (Second) of Contracts* § 179 (1981)). *But see In re Estate of Meyers*, 709 P.2d 1044 (Okla.1985) (antenuptial waiver of homestead and probate allowance which was unenforceable as against public policy at the time the antenuptial agreement was signed given effect); *Hargrave v. Canadian Valley Electric Cooperative, Inc.*, 792 P.2d at 59 (an agreement is unenforceable if the interest in its enforcement is outweighed by a public policy harmed by enforcement; public policy fluctuates with changing economics, social values and morals). In determining whether a contract is to be voided on public policy grounds, this Court must employ the standard articulated by the Oklahoma Supreme Court:

> We must remain mindful that contracts should not be declared void on the ground of public policy except in those cases that are free from doubt. Prejudice to the public interest must be clearly apparent before a court is justified in pronouncing a solemn agreement to be of no effect. Contract right constitutes no small part of the liberty of a citizen. One of the law's important functions is to uphold the binding obligation of a promise rather than to enable the parties to escape from it on the pretext of public policy. Contracts must stand unless it clearly appears that public right or public weal is contravened. *Dayton Hudson Corp. v. American Mutual Liability Insurance Co.*, 621 P.2d 1155, 1160 (Okla. 1980) (footnotes omitted).

*Accord Shepard v. Farmers Insurance Co.*, 678 P.2d 250, 251 (Okla.1983) (power to nullify contracts as contrary to public policy is to be exercised rarely, with great caution and in cases free from doubt; contract must clearly tend to injure public health, morals or confidence in administration of law or undermine the security of

---

**1.** The Green and Collier releases and easements relate to "pollution by ... depositing or turning into Cottonwood Creek oil, waste of oil, sediment of [sic] saltwater...." See Exhibits "A" & "C" to Brief in Support of Defendant Mobil Oil Corporation's Motion for Summary Judgment.

The Creel release and easement relate to "pollution ... by depositing or turning into *any* Creek [sic] Oil [sic], waste of oil, sediment or saltwater...." *See id.* at Exhibit "D" (emphasis added).

individual rights as to personal liberty or private property). *Sabine Corp. v. ONG Western, Inc.,* 725 F.Supp. at 1183 (same). Even if an entire agreement is not unlawful or contrary to public policy, that clause or portion of it which is will be exercised and not enforced. *See Hargrave v. Canadian Valley Electric Cooperative, Inc.,* 792 P.2d at 60. *See also Pellow v. Pellow,* 714 P.2d 593, 599 (Okla.1985).

▪ Plaintiffs' predecessors' freedom of contract and right to do with their private property as they wished are outweighed by a strong public policy of the State of Oklahoma against permitting pollution, *see* statutes and rules cited *supra,* a policy which would be frustrated by the agreement in question. *Compare with Hargrave v. Canadian Valley Electric Cooperative, Inc.,* 792 P.2d at 59. The prejudice to the public's interest emanating from permitting a private landowner to release, for and on behalf of the landowner's remote heirs or grantees in perpetuity, a company and its successors in perpetuity from liability for any pollution in perpetuity and which emanates from permitting a private landowner to grant an easement to pollute in potential perpetuity is clear and unmistakable.

It is true, as Defendants point out, that the Oklahoma Supreme Court has, in the past, held that releases and easements like those at issue but relating to the flowing of saltwater over land are not void as contrary to the public policy of the State of Oklahoma expressed in Okla.Stat. tit. 52, § 296. *See Phillips v. Altman,* 412 P.2d 199, 201 (Okla.1966); *Stanolind Oil and Gas Co. v. Phillips,* 195 Okl. 377, 157 P.2d 751 (1945). Those cases were based upon a narrow interpretation given the statutory predecessor of § 296 by the Court in *Tidal Oil Co. v. Pease,* 153 Okl. 137, 5 P.2d 389, 392 (1931). The *Tidal Oil* Court's interpretation of that statute was predicated on the assumption that oil or gas production might be rendered impossible if an operator couldn't flow saltwater over his own property; thus the court rejected a literal interpretation of the statutory predecessor of Section 296 and held that the intent of that section was to prevent persons operat-

ing oil or gas wells from depositing oil, etc. in ponds, tanks, etc. used by others to water stock or to flow into streams upon the premises of others, and also to prevent such operators from allowing saltwater to escape from their wells and flow over the surface *of the land of others."* 5 P.2d at 392 (emphasis added). This Court is of the opinion that the Oklahoma Supreme Court would not so interpret Section 296 today. The plain language of the statute makes it unlawful to allow saltwater to flow over the surface of *any* land. Interpreting the statute according to its plain meaning is mandated by rules of construction. Such an interpretation would also give recognition to the scientific facts that groundwater is not static and that permitting salt water to flow over the surface of land may cause pollution of groundwater and streams on other land topologically downstream. More importantly, however, even in the *Tidal Oil* case the Oklahoma Supreme Court recognized that, pursuant to Section 296, "[n]one of the defendants had the right to pollute the streams flowing across this [the plaintiffs'] land...." Thus, even the *Tidal Oil* Court presumably would have recognized that the releases and easements in this case, which purported to grant Magnolia and its successors the right to dump and transport oil waste, saltwater, etc. in the Cottonwood Creek and other creeks, which traverse others' property, and to release Magnolia and its successors in perpetuity from liability for such *in futuro,* were contrary to express law and public policy implicit therein.

Moreover, even if the Oklahoma Supreme Court were to reaffirm the *Tidal Oil* interpretation of Section 296, neither that case nor the *Phillips* and *Stanolind* cases are dispositive of whether releases and easements such as those at issue herein are unlawful under other statutes or contrary to public policy expressed therein. This is even evident from the opinion in *Tidal Oil.* In the *Tidal Oil* case the plaintiffs claimed that the defendants had violated both Sections 6526 and 7969 of the 1921 Oklahoma Statutes. The court stated that "[t]here is no evidence that any of the defendants deposited oil in any of the

streams," and therefore, that Section 6526 had no application. 5 P.2d at 392. Hence, the court only interpreted Section 7969, the predecessor of Okla.Stat. tit. 52, § 296, as giving a property owner the right to run saltwater over his own land.

■ Even if the easements in question are not void as contrary to public policy, a material issue of fact exists concerning whether the easements terminated. Plaintiffs have submitted evidence that Defendant Mobil never relied on the existence of the easements in conducting its oilfield operations on Sections 30, 31 and 36 and has not, at least since 1971, put oil or saltwater in creeks. This evidence, together with Mobil's admission that it is not necessary and, it may be inferred, has not been necessary for forty years, to flow saltwater into Cottonwood Creek to run a proper oilfield operation in Sections 30, 31 and 36, creates a genuine issue of material fact as to whether the easements in question terminated under the cessation of purpose doctrine. *See Weston v. Whitaker*, 102 Okl. 95, 226 P. 1034, 1035 (1924). *See also Griffin v. Dwyer*, 181 Okl. 71, 72 P.2d 349, 350 (1937).

■ Even if the easements and releases are not contrary to law or public policy and the easements have not terminated, summary judgment is still not appropriate. First, the releases and easements in question do not cover all of the Plaintiffs' property, *see* Affidavit of D. Craig Story (Exhibit "A" to "Plaintiffs' Answer to Mobil Oil Corporation's Motion for Summary Judgment") at ¶¶ 6, 7, 10, 16 & 17, or at least a material issue of fact exists concerning whether all of Plaintiffs' property is subject to the releases and easements. With respect to the Collier release and easement, because it appears that the other eight co-tenants and owners of an undivided two-thirds interest in the Collier property did not execute the release and easement, a material issue of fact exists concerning the validity of that release and easement, at least with respect to whether it is valid as to an undivided two-thirds interest in the Collier property, *see Cooperative Refinery Association v. Young*, 393

P.2d 537 (Okla.1964); *Coal Oil & Gas Co. v. Styron*, 303 P.2d 965, 969–70 (Okla. 1956), Defendants having made no showing that Mrs. L.A. Collier was authorized to act as the agent for her adult children in signing the release and easement. Finally, even if all of the foregoing issues did not exist or were resolved in Defendants' favor, Defendants have failed to show that the releases and easements in question would preclude any recovery by Plaintiffs on their Complaint. Plaintiffs allege, for example, that "Defendants allowed … tank batteries, lines and wells to be operated, maintained and plugged in such a way as to cause severe pollution to the surface and subsurface soil and water" and "have … polluted by not having adequate tubing, casing and cement in active and inactive wells so as to prevent deleterious substances from migrating to other zones and particularly to soil and aquifers above the base of treatable water." Third Amended Complaint at ¶¶ 10 & 12. *See also id.* at ¶¶ 13, 14. Defendants have failed to show that the releases and easements in question, even if enforceable, preclude Plaintiffs' recovery of damages for Defendants' deposition of oil wastes, saltwater or other deleterious substances in other than Cottonwood Creek and other creeks running through Plaintiffs' property. If the language of a release is unambiguous, the intent of the parties thereto is to be derived solely from the four corners of the instrument, *see, e.g., Brown v. Brown*, 410 P.2d 52, 57 (Okla.1966); *Taylor v. Beech Aircraft Corp.*, 407 F.Supp. 69, 72 (W.D.Okla. 1976), and the interpretation of the release is a question of law for the Court. *Corbett v. Combined Communications Corp.*, 654 P.2d 616, 617 (Okla.1982). It is apparent from the first paragraph of each of the releases and easements in question that the parties' intent in executing them was not to release (and obtain a release) from liability for all damages, past and future, for any form of pollution in any manner on the property in question but rather to release (and obtain a release) from liability for damages to the property in question from pollution, past and future, "*by* depositing or turning into Cottonwood Creek [or any

creek][2] oil, waste of oil, sediment or salt water...." Release of Damage and Easement (Exhibits "A", "C" & "D" to Brief in support of Defendant Mobil Oil Corporation's Motion for Summary Judgment) at first unnumbered paragraph (emphasis added). The broad language in the third paragraph of the releases must be read in conjunction with the first paragraph, which has the effect of limiting the applicability of the releases to damages from pollution caused by turning oil, oil waste, sediment or saltwater into Cottonwood Creek or other creeks.

The Court finds it unnecessary to address other arguments made by Plaintiffs and Defendants' counter-arguments.

The motions for summary judgment of Defendants Mobil Oil Corporation and Citation Oil and Gas Corporation are, consistent with the foregoing, DENIED.

IT IS SO ORDERED.